IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

BONNIE J. MAYO,

      Plaintiff,

      v.

                              CIVIL ACTION NO. 4:13cv163

WELLS FARGO BANK, N.A.,
FEDERAL HOME LOAN MORTGAGE CORP.,
and
SAMUEL I. WHITE, P.C.,

      Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants Wells Fargo Bank, Federal Home Loan Mortgage Corporation, and Samuel White P.C.'s Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).   ECF No. 16.   Plaintiff Bonnie Mayo raises five state law claims against Defendants pertaining to the refinancing of her since-foreclosed home.   For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Bonnie Mayo alleges the following relevant facts in the Amended Complaint. ECF No. 12.   In December 2009, Plaintiff executed a refinancing of the mortgage on her home in Williamsburg, Virginia, which reduced the loan's interest rate by 0.5%.   Am. Compl. ¶¶ 2-6; *id.*, Ex. B.   The Refinance Note required monthly payments of $1,251.96 for interest and principal, to begin in February 2010.   Am. Compl. ¶ 5; *id.*, Ex. B.   The named lender was Defendant Wells

Fargo Bank, N.A. and the named trustee was Defendant Samuel I. White, P.C.   Am. Compl. ¶ 8.
Plaintiff also executed a Deed of Trust to secure repayment of the Refinance Note.   Am. Compl. ¶
7; *id.*, Ex. C.   At some point thereafter, the loan was sold to Defendant Federal Home Loan
Mortgage Corporation ("FHLMC") (otherwise known as Freddie Mac).   Am. Compl. ¶ 52.
Plaintiff alleges that she understood that the loan would not require escrow payments because she
did not receive proper disclosure statements when she finalized the refinancing.   Am. Compl. ¶¶
9-10.   For that reason, she did not make escrow payments billed to her by Wells Fargo and in June
2010, Wells Fargo declared her in default.   Am. Compl. ¶¶ 15, 23.   The latest payment towards
interest and principal that Plaintiff alleges making was in May, 2010.   Am. Compl. ¶ 22.   The
home was foreclosed a year later, in June 15, 2011, and purchased by Wells Fargo.   Am. Compl.
¶¶ 31-32.

    Plaintiff twice declared bankruptcy: once before the foreclosure, and once after.   Both
proceedings were ultimately dismissed.   Defts' Mem. in Opp. to Pltf's Req. for TRO, ECF No.
22, at 1-2.   After the United States Court of Appeals for the Fourth Circuit denied Plaintiff's
appeals from the second bankruptcy proceeding on October 4, 2012, Defendant FHLMC filed an
unlawful detainer action in state court on November 20, 2012.   *Id.* at 2.   The York County
General District Court granted possession to FHLMC on December 18, 2012, and Plaintiff
appealed to the York County Circuit Court.   *Id.*   Nearly a year later, on December 11, 2013, that
court also granted possession to FHLMC, and its judgment became final on January 12, 2014.   *Id.*
at 2-3.

    In the meantime, Plaintiff had filed the first iteration of the instant complaint in state court.
Defendants ultimately removed the case to this Court in December 6, 2013, pursuant to 12 U.S.C.

§ 1452(f), which allows removal to federal court "at any time before trial" in cases in which FHLMC is a party. Plaintiff filed an Amended Complaint on December 30, 2013. ECF No. 12. On January 9, 2014, Defendants filed the instant Motion to Dismiss, ECF No. 16, and accompanying Memorandum, ECF No. 17 (hereinafter "Mot. to Dismiss"). Plaintiff filed her Opposition on January 23, 2014, ECF No. 18 (hereinafter "Opp."), and Defendants filed their Reply on January 28, 2014, ECF No. 19. The matter is accordingly ripe for disposition.

This is not the first order that the Court has entered in this case. On February 3, 2014, Plaintiff was served with a notice of eviction in execution of the state court's judgment of possession. ECF No. 21, at 1-2. Arguing that the eviction should be stayed pending the outcome of her pending suit, Plaintiff requested that this Court grant a Temporary Restraining Order or a Preliminary Injunction. The Court held a hearing on February 6, 2014 and denied Plaintiff's requested TRO the following day. ECF No. 24.

## II. STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. *See* Fed. R. Civ P. 12(b)(6). The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, at the motion to dismiss stage, the Court is bound to accept all of the factual allegations in the Complaint as true. *Id.* However,

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a Rule 12(b)(6) Motion to Dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment proceeding. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

The parties agree that Virginia substantive law applies to Plaintiff's claims, all of which are state common law claims. *See, e.g.*, Opp. at 3 (relying on Virginia case law); Mot. to Dismiss at 14 (same). Nonetheless, the Court will apply federal rules that are procedural, such as the standards for a Rule 12(b)(6) motion discussed above. *Rowland v. Patterson*, 852 F.2d 108, 110 (4th Cir. 1988).

## III. DISCUSSION

### A. Count I: Breach of Contract

Plaintiff raises her breach of contract claim against Defendants Wells Fargo and FHLMC, whom she alleges were the lenders during the relevant time period. Specifically, Plaintiff says

that the ownership of her loan changed from Wells Fargo to FHLMC at some point, but that Wells Fargo remained the agent of the subsequent lender.   Am. Compl. ¶ 52.   She claims that the Deed of Trust dated December 14, 2009 is the relevant contract and that it was improperly breached in six different ways:

> 1) Wells Fargo required Plaintiff to submit monthly payments in an amount that exceeded the agreed-upon amount.
>
> 2) Wells Fargo required Plaintiff to make payments into an escrow account although the loan was to be without escrow.
>
> 3) Wells Fargo invoked the power of sale even though the contract gives that sole power to the actual lender and it only may be exercised in the event of a default.
>
> 4) Neither the lender nor the agent of the lender sent Plaintiff the notice of default, right to cure, acceleration, or foreclosure.
>
> 5) Wells Fargo failed to provide Plaintiff with notice that she had a right to bring a cause of action to dispute the default.
>
> 6) Wells Fargo and FHLMC improperly sold Plaintiff's home in foreclosure where the only default was itself created by Wells Fargo.

Am. Compl. ¶¶ 50, 53-58.   Defendants contend that all of these allegations fail to state a claim for which relief may be granted.

Under Virginia law, a viable breach of contract claim has three elements: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E. 2d 610, 614 (Va. 2004).   The relevant contract, which Defendants do not dispute is binding, is the Deed of Trust dated December 14, 2009.   Am. Compl. ¶ 50.

The Court will first address Plaintiff's second contention regarding the payment of escrow, as it will be relevant to considering Plaintiff's first contention.   Section 1 of the Deed of Trust

states:

> 1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. *Borrower shall also pay funds for Escrow Items pursuant to Section 3. . . .*

Am. Compl., Ex. C, at 4 (emphasis added).   Section 3, in turn, provides:

> 3. Funds for Escrow Items.  Borrow shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in fill, as sum (the "Funds") to provide for payments of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any . . . .  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. *Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.*  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing. . . .
>
> If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.
>
> Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

*Id.* at 5-6 (emphasis added).

This language disposes of Plaintiff's argument that the contract was breached because she was required to pay escrow.  The Deed of Trust clearly states that Plaintiff was to pay escrow to the lender.  Section 1 states that Plaintiff "shall also pay funds for Escrow Items pursuant to Section 3," and Section 3 describes what count as "Escrow Items" and reiterates that "Borrower

6

shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items."   In her Opposition, Plaintiff contends that this language should be disregarded because it is contained "in *all* deeds of trust, whether an escrow loan or not." Opp. at 5-6.   Even assuming this is true, Plaintiff does not explain how this fact would contravene the clear language of the Deed of Trust.

Plaintiff also claims she "waived" the requirement to pay escrow fees to the lender by not signing an escrow disclosure. *Id.* at 6.   But pursuant to the Deed of Trust, only the lender may waive the requirement to pay escrow and must do so in writing.   Finally, Plaintiff points to the provision in the Deed of Trust stating that in the event of a shortage in the escrow fund, the Borrower shall make up the shortage in no more than twelve monthly payments.   Accordingly, Plaintiff contends, she was not properly placed in default for failure to pay escrow and should have been allowed to make up payments.   But Defendants sent Plaintiff a notice of default when it claimed she was $2,072.06 behind in payments—which was not solely escrow but substantially composed of payment on the interest and principal of the loan.   Am. Compl., Ex. K.

Plaintiff's first ground for breach of contract is that Wells Fargo "breached the contract by requiring Plaintiff to submit monthly payments in an amount that exceeded that which the parties agreed upon."   Am. Compl. ¶ 53.   It is not entirely clear what the specific basis of this claim is. To the extent that Plaintiff reiterates that she expected that she would not pay escrow, the Court has already rejected this argument for the reasons explained above.   Assuming arguendo that Plaintiff means that the required initial escrow amount of $230.31 per month, Am. Compl. Ex. F, was higher than she had expected, she does not explain how this is a breach of the relevant contract. The Deed of Trust, as quoted above, does not say escrow will be a specific amount, but explains

7

how escrow will be determined and clearly contemplates that it may fluctuate over time.   The

Amended Complaint does not allege that escrow was improperly calculated using expenses not

listed as "Escrow Items" in the Deed of Trust.   Relatedly, Plaintiff also alleges that what the exact

escrow payments would be was not disclosed to her at all at the time of refinancing, Opp. at 4, but

she does not point to a specific provision of the Deed of Trust that was violated by the lack of

initial disclosure.

     Plaintiff may mean that whatever the cause, her monthly payment went up when she

expected it to go down because the refinancing lowered her interest rate by 0.5%, and that this

amounts to a breach of contract. Am. Compl. ¶¶ 13-14.   But any such assertion is so vague and

unclear as to fail federal pleading standards.   Exhibits attached to the Amended Complaint

indicate that Plaintiff's monthly payment under her prior mortgage might have been $1,588.22, of

which $230.31 was escrow, *id.* Ex. E, or $1,485.87, including an unspecified amount of escrow, *id.*

Ex. A.   (The Amended Complaint asserts it is the latter amount.   *Id.* ¶ 2.)   The Initial Escrow

Account Disclosure for the new loan indicated that Plaintiff's new monthly payment after the

refinancing would be $1,482.27, including a principal of $1,251.96 and escrow of $230.31.

Because of an escrow shortage, that amount increased in March 2010 to $1,501.41.   *Id.* Ex. F.   In

sum, it is unclear whether the total monthly payments reflecting principal, interest, and escrow

increased or decreased, but any difference was very small.   And the change in the monthly

amount as a result of the refinancing could be influenced by a large number of variables, including

any change in the equity in the home, any change in the payment plan, *see* Mot. to Dismiss 7-8

n.1., and the estimated amount of taxes and insurance.   Further, Plaintiff has not pointed to

anything in the Deed of Trust that says her monthly payment was guaranteed to go down as a result

of the refinancing.

Third, Plaintiff argues that Sections 16(c) and 22 of the Deed of Trust allow only the lender to invoke the power of sale,[1] and that Wells Fargo improperly invoked that power by foreclosing her home when they were not the lender at that time.  Am. Compl. ¶ 55.  Relatedly, Plaintiff's fourth argument regarding a breach of contract is that Wells Fargo inappropriately sent notices of default, right to cure, acceleration, and foreclosure, id. ¶¶ 38, 56, notices which she says the Deed of Trust required the Lender to send (she does not, however, specifically reference the relevant provisions of the Deed of Trust).  She relies on a November, 2011 mailing from Defendant Samuel White after the foreclosure as grounds for the allegation that ownership of the mortgage changed prior to the foreclosure.  That mailing states that "[t]his is a Freddie Mac investor loan." Id., Ex. J.

But Plaintiff elsewhere alleges multiple times in the Amended Complaint that Wells Fargo was acting "as agent for the true lender" and "at all times represented itself as the owner of the indebtedness."  Am. Compl. ¶¶ 40, 52-54.  And under Virginia law, "[t]he doctrine of principal and agent—whether disclosed or undisclosed—recognizes that privity of contract exists.  The act of the agent is the act of the principal." Harris v. McKay, 122 S.E. 137, 140 (Va. 1924). Therefore, Plaintiff has not shown how any contractual duty was breached because the agent (Wells Fargo) acted in the stead of the principal (FHLMC).  Plaintiff argus that Wells Fargo was not acting as the agent when it sent the notices, Am. Compl. ¶¶ 38, 56, but this conflicts with numerous allegations elsewhere in the Amended Complaint that Wells Fargo acted as the agent of the lender.  Plaintiff has therefore failed to adequately plead this claim to the extent she alleges

---

[1] Section 22 of the copy of the Deed of Trust attached to the Amended Complaint is illegible in parts, so the Court will assume for the purposes of this Order that it says what Plaintiffs claims it says.

that Wells Fargo was not acting as FHLMC's agent when it sent those notices but was acting as an agent at all other times. Additionally, to raise a viable breach of contract claim under Virginia law, Plaintiff must demonstrate that she was injured by the breach. *Filak*, 594 S.E. 2d at 614. Plaintiff admits that she received the notices, but does not explain how she was harmed by them being sent by the wrong party. Accordingly, even if Plaintiff had shown that Wells Fargo was not acting as FHLMC's agent when it sent the notices, her claim fails because she has not adequately pled any injury as a result.

A final component of Plaintiff's fourth breach of contract claim is that she received a notice of default (on June 13, 2010) when she was not yet in default. Am Compl. ¶ 23, 56. She avers this is so because Wells Fargo was demanding unwarranted sums from her. But as the Court has already held, requiring escrow was not in violation of the Deed of Trust, and Plaintiff herself acknowledges that she never paid escrow. Am. Compl. ¶¶ 5, 15 (stating that for the first few months after the refinancing, Plaintiff only paid the $1,251.96 monthly amount that represented only interest and principal).

Fifth, Plaintiff alleges that one of the notices she received was substantively inadequate. Specifically, she contends that she "was not informed that she had a right to bring a cause of action to dispute the default or assert defenses to acceleration." Am. Compl. ¶ 57. She states that such notices were required by Section 22 of the Deed of Trust. Portions of that Section are illegible, but as best the Court can discern, the relevant part of that Section provides:

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to any acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in

acceleration of the sums secured by this Security Instrument and sale of the Property. *The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.* If the default is not cured on or before the date [stated in] the notice, Lender at its option may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the power of sale and any other [remedy] permitted by Applicable Law. . . .

Am. Compl., Ex. C (emphasis added). But as the Amended Complaint itself acknowledges, Wells Fargo sent Plaintiff a letter dated June 13, 2010, informing her that she was in default and giving her 30 days to cure it. Am. Compl. ¶ 23 (citing Ex. K). It further informed her that if she did not pay the $2,072.06 that was owed, Wells Fargo would proceed with acceleration and could proceed to foreclosure. It also noted, "[i]f foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have." Further, it told her of the right to reinstatement: "You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration, and to have enforcement of the Mortgage discontinued and to have the Mortgage Note and Mortgage remain fully effective as if acceleration had never been required." Am. Compl., Ex. K.

While the letter informed Plaintiff that she could make certain arguments and raise defenses if the Lender initiated a foreclosure, that is different from informing her that she herself could initiate a court action to prevent acceleration or foreclosure before those processes even occurred. This is particularly so when the lender chooses to utilize nonjudicial foreclosure proceedings, as Wells Fargo did here. Am. Compl. ¶ 96. The Court recognizes that another case in this District has reached the opposite conclusion based on identical language in both the Deed of Trust and the notice letter, reasoning that the letter was the "functional equivalent" of what the

11

Deed of Trust required  *See Matanic v. Wells Fargo Bank, N.A.*, No. 3:12cv472, 2012 WL 4321634 (E.D. Va. Sept. 19, 2012).  Nonetheless, the Court disagrees with the basis for that conclusion.  The court in *Matanic* reasoned that such a breach could not be considered "material," which Virginia courts define as "a failure to do something that is so fundamental to the contract that the failure to perform the obligation defeats and essential purpose of the contract."  *Id.* at *5 (quoting *Countryside Orthopaedics v. Peyton*, 541 S.E. 2d 279, 285 (Va. 2001)).  But Virginia law recognizes both "material" and "non-material" breaches as viable causes of actions entailing different remedies and defenses.  *See RW Power Partners, L.P. v. Va. Elec. & Power Co.*, 899 F. Supp. 1490, 1496 (E.D. Va. 1995).  Therefore, that a given breach would not be material does not mean that it would not be a breach of contract at all.  The Court does not decide whether or not Plaintiff's alleged breach was material or non-material, but only concludes that she has sufficiently pled the elements of a breach of contract claim regarding the notice letter, as described in paragraph 57 of the Amended Complaint.  *See Belote v. Bank of Am., N.A.*, 3:12CV526-JRS, 2012 WL 6608973 (E.D. Va. Dec. 18, 2012) ("Defendant's challenge to the materiality of the breach in this case would best be addressed in a motion for summary judgment.").

The Amended Complaint's sixth and final breach of contract claim is that it was a breach of contract to sell Plaintiff's home at foreclosure, as there was no legitimate default existing at the time.  The last payment that Plaintiff claims she made was in May, 2010. Am. Compl. ¶ 22. Even prior to then, she states that she was not paying escrow.  *Id.* ¶ 15.  The foreclosure sale did not occur until over a year later.  It is abundantly clear that Plaintiff was in default because she did not make the required payments.  Therefore, the Court concludes that Plaintiff has failed to plead a standalone claim that foreclosure was inappropriate because there was no default.  This

12

conclusion does not, however, necessarily impact her potential remedies for other viable claims.

For the reasons stated above, Defendants' Motion to Dismiss Count I, the breach of contract claim, is **DENIED** as to the specific claim identified in Paragraph 57 of the Amended Complaint, and **GRANTED** as to the remaining breach of contract claims.

## B.  Count II: Breach of Fiduciary Duty

Plaintiff's second claim is for breach of fiduciary duty against Defendant Samuel I.White, P.C. ("the White firm").   The Deed of Trust lists the White firm as the trustee, Plaintiff as the trustor, and Wells Fargo as the beneficiary.   Am. Compl., Ex. C.   Plaintiff contends that the White firm breached its fiduciary duty because it: 1) failed to perform its duties with reasonable care because it sent foreclosure notices when Plaintiff was not in default, Am. Compl. ¶ 62; 2) proceeded to the foreclosure sale even though the Note was lost, in violation of Va. Code § 55-59.1, Am. Compl. ¶¶ 63-64; 3) failed to disclose to Plaintiff the true identity of the Lender, Am. Compl. ¶¶ 65-71; 4) failed to investigate Plaintiff's claims of error, Am. Compl. ¶¶ 72-73; and 5) failed to act impartially, placing its own interests before Plaintiffs, Am. Compl. ¶ 74.

Defendants contend that under Virginia law, the duties of a trustee are limited to those in the Deed of Trust, and that none of the above violations are grounded in that document.   Plaintiffs respond that a trustee has common law duties outside of the deed of trust.   This dispute reflects somewhat conflicting statements in Virginia case law.   Virginia courts have frequently noted that the duties of a trustee are limited and defined by the deed of trust.   *E.g.*, *Warner v. Clementson*, 492 S.E. 2d 655, 657 (Va. 1997) ("The power and duties of a trustee in a deed of trust, given to secure the payment of a debt, are limited and defined by the instrument under which he acts." (quoting *Powell v. Adams*, 18 S.E. 2d 261, 262-63 (Va. 1942)); *Buzbee v. U.S. Bank, N.A.*, 84 Va.

13

Cir. 485 (2012).  In reliance on these precedents, many federal district courts have rejected claims

in like cases that are ground in common law fiduciary duties.  *E.g.*, *Sheppard v. BAC Home Loans*

*Servicing, LP*, 3:11-CV-00062, 2012 WL 204288 at *7 (W.D. Va. Jan. 24, 2012).  And the

Virginia Supreme Court has recently re-iterated that duties grounded exclusively in a contract are

not the properly the subject of a breach of fiduciary duty claim, but must be brought as a breach of

contract claim.  *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 294-95 (Va. 2007).  This

means that if a trustee's duties are indeed exclusively limited to the deed of trust, the debtor could

only bring a breach of contract claim.

However, Virginia courts have also repeatedly noted that a trustee named in a deed of trust

is a fiduciary for both the debtor and the creditor.  *Whitlow v. Mountain Trust Bank*, 207 S.E.2d

837, 840 (Va. 1974).  And a traditional fiduciary is subject to numerous common-law duties,

many of which would likely not be enumerated in a typical deed of trust.  *See, e.g.*, Restatement

(Third) of Trusts §§ 76-84.  To reconcile these conflicting principles, the Court will not

incorporate all of the common law duties of a traditional fiduciary, but will only impose on the

trustee those limited duties that Virginia law has specifically recognized in the context of a deed of

trust.  This approach accords with relevant treatises.  For example, the Restatement (Third) of

Trusts notes that "mortgages, deeds of trusts, pledges, liens, and other security arrangements" are

not trusts at all.  § 5 (2003).  Another treatise explains that "a fiduciary relationship does not exist

between a trustor and trustee under a deed of trust.  Instead, under a deed of trust, the relationship

is analogous to that of a mortgagor and mortgagee and is characterized as a business relationship,

rather than a fiduciary relationship."  Amy Hess et al., Bogert's Trusts and Trustees, The Law of

Trusts and Trustees § 29 (2013).  *See Int'l Fid. Ins. Co. v. W. Va. Water Auth.*, 7:11-CV-00441,

2012 WL 2357368 (W.D. Va. June 20, 2012) (noting that the fiduciary duties associated with escrow arrangements are "much narrower in scope than [the duties in] other fiduciary relationships such as attorney and client" (quotations omitted)).

The Court finds that the only common law duty consistently recognized by the Virginia Supreme Court with respect to the trustee for a Deed of Trust security real property is a duty of impartiality.   Specifically, in *Whitlow*, the court concluded that when the named trustee in the deed of trust owned a substantial amount of stock in the corporation which purchased the home at the foreclosure, the foreclosure sale must be set aside because the trustee did not "refrain from placing himself in a position where his personal interest conflicts with the interests of those for whom he acts as a fiduciary."   207 S.E.2d at 840; *id.* ("The general rule concerning the position of a trustee under a deed of trust is that the trustee is a fiduciary for both the debtor and creditor and must act impartially between them.").   The Amended Complaint does allege that the White firm violated a common law duty of impartiality.   However, that allegation is conclusory and fails to meet the requisite pleading standards.   By the time her home was foreclosed, Plaintiff had long stopped making payments on the loan and had been through a bankruptcy proceeding.   Plaintiff does not allege that the trustee had a conflict of interest like the trustee in *Whitlow*.   Without more, the Court cannot conclude that the facts pleaded raise a plausible inference that the White firm violated any common law duty of impartiality.   *See Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 700 (E.D. Va. 2010) (no breach of fiduciary duty against trustee where the Deed of Trust authorized foreclosure in the event of default).   None of the other common law claims are viable under Virginia law; accordingly, Plaintiff's first, third, fourth, and fifth breach of fiduciary duty claims as described above are **DISMISSED**.

15

Plaintiff's remaining fiduciary claim against the White firm is that it proceeded to foreclose without providing an affidavit of a lost note pursuant to Va. Code § 55-59.1. That provision says that if a note secured by a deed of trust is lost and the trustee is made aware of that loss by an affidavit sent by the beneficiary, the trustee may nonetheless proceed to sale as long as they have given proper notice to the debtor. Plaintiff alleges in the Amended Complaint that she did indeed receive notice of the lost note, Am. Compl. ¶ 26. Her claim is only that the trustee did not receive an affidavit to that effect, even though the letter the White firm sent her stated that Wells Fargo had requested it to send her the notice. *Id.* Ex. M. Even assuming that the statute gives rise to a fiduciary duty, Plaintiff has failed to plead how she was injured by that breach given that she received notice. *See Sun Hotel, Inc. v. SummitBridge Credit Investments III, LLC*, 86 Va. Cir. 189 (2013) (listing the elements of a breach of fiduciary duty claim as duty, breach, and resulting injury to the plaintiff). Under the statute, "the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale." Va. Code § 55-59.1. *See Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11cv20, 2013 WL 3894842, at *15 (E.D. Va. July 26, 2013) (dismissing a breach of fiduciary duty claim). Therefore, Plaintiff's remaining claim of a breach of fiduciary duty is also **DISMISSED**.

For the reasons just discussed, Defendants' Motion to Dismiss Count II is **GRANTED**.

## C. Count III: Tortious Interference with Contract

In her Opposition, Plaintiff stated that she was withdrawing this claim. Accordingly, Defendants' Motion to Dismiss Count III is **GRANTED**.

## D. Count IV: Equitable Action to Rescind Foreclosure

Plaintiff's fourth claim is entitled, "Equitable Action to Rescind Foreclosure." As a basis

for "rescission," Plaintiff recites the wrongs alleged in the breach of contract and breach of fiduciary claim: requiring more than was due per the parties' contract, an inadequate notification of Plaintiff's right to cure, an undisclosed change in lenders, notices sent from the incorrect party, and the lost note issue. The Court has already dismissed all of these underlying claims except for the breach of contract claim stemming from inadequate notification of Plaintiff's right to cure. For this reason, the question is whether the foreclosure may be set aside as an equitable remedy for that condition precedent to the sale not being satisfied.

Defendants contend that Virginia courts do not recognize the remedy of equitable rescission of foreclosure. But Virginia courts have, in equity, recognized claims to aside foreclosure sales after they occur because of some problem with the sale. *E.g.*, *First Funding Corp. v. Birge*, 257 S.E.2d 861, 866 (1979); *Cromer v. De Jarnette*, 51 S.E. 2d 201 (1949); *Wills v. Chesapeake W. Ry. Co.*, 16 S.E.2d 649, 652 (1941) ("[W]here the deed of trust authorizes the trustee to sell the property upon the request of the beneficiary or creditor therein secured, such request is a condition precedent of the trustee's right to sell, and in the absence of such request the sale may be set aside in a court of equity."); *Harrison v. Manson*, 95 Va. 593 (1898); *Rossett v. Fisher*, 52 Va. 492 (1854); *Walker v. Va. Housing Dev. Auth.*, 63 Va. Cir. 358 (2003). Nonetheless, Defendants cite two cases that they contend support their position. The court in *Neil v. Wells Fargo Bank, N.A.*, did indeed categorically state that "[t]here is no equitable claim to rescind a foreclosure sale in Virginia." 1:13cv644, 2013 WL 4782030 at *3 (E.D. Va. Sept. 4, 2013). However, because that statement was unaccompanied by any further discussion or any citation, and the Court will not rely on it for a statement of Virginia law. The recent Virginia Supreme Court case of *Mathews v. PHH Mortgage Corp.* does give the Court greater pause. 724

17

S.E. 2d 196 (Va. 2012). There, a borrower in default challenged the conditions precedent to foreclosure in a declaratory judgment action. The court rejected the trustee's argument that the borrower could not make such a claim when they themselves were in default. In doing so, it noted that "the borrower is the only party with standing to bring an action, whether for damages after the fact of the improper sale or to bar the improper sale in equity before it occurs." *Id.* at 199. The Court acknowledges that the implication of this statement is that a borrower may not bring a claim in equity after a foreclosure sale. But that was not stated explicitly, and the quoted statement is in any event not the holding of the case. In light of the Virginia precedents allowing the setting aside of foreclosure sales in equity, the Court cannot conclude that the statement in *Mathews* was meant to set aside that precedent without explicit mention.

It may very well be that equity would not support setting aside the foreclosure sale for the allegedly faulty notice in these circumstances. *E.g., In re Tr.'s Sale of Prop. of Brown*, 67 Va. Cir. 204 (2005) ("[N]ot all defects in a foreclosure sale render the sale void. A sale under a deed of trust will only be set aside for weighty reasons; it will not be declared a nullity on mere technical grounds."). But very little argument has been made on this issue at this juncture. And of course, if the notice claim is eventually dismissed, then this claim will fail as well. *See Pierce v. Wells Fargo Bank*, 85 Va. Cir. 32 (2012). The Court concludes that further facts and arguments relevant to the breach of contract claim will be highly relevant and helpful in the disposition of this claim. Defendants' Motion to Dismiss Count IV is **DENIED**.

**E. Count V: Abuse of Process**

Plaintiff's final claim is for abuse of process against Wells Fargo for utilizing nonjudicial foreclosure for an improper purpose. Under Virginia law, "abuse of process lies for the improper

use of process after it has been issued." *Donohoe Constr. Co., Inc. v. Mount Vernon Assocs.*, 369 S.E. 2d 857, 862 (Va. 1988) (quotations omitted).   To prevail, a plaintiff must prove "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Id.*  "The distinctive nature of malicious abuse of process lies in the perversion of regularly-issued process to accomplish some purpose for which the procedure was not intended." *Id.*  Plaintiff has not sufficiently pleaded the elements of this cause of action, even assuming that non-judicial foreclosure is "process" within the meaning of this cause of action.   By the time of the foreclosure sale, she had ceased making required payments for some time.   After the foreclosure occurred, she has not alleged that Wells Fargo did anything improper or extortionate.   She alleges in a conclusory fashion that the foreclosure was used to "force" her into "accepting terms of any delinquent amount that the Defendants indicated past due" and as "a means of extortion to force Plaintiff to accept the terms dictated by Defendants."   Am Compl. ¶ 96.   But she provides no specific factual support for these claims that would raise a plausible inference of abuse of process.   Accordingly, Defendants' Motion to Dismiss Count V is **GRANTED**.

### F.  Compensatory Damages

Defendants also allege that the Court should strike Plaintiff's request for compensatory damages because she fails to offer any factual or legal support for her demands for damages and fails to demand a specific amount of damages.   In light of the remaining breach of contract claim which may entitle Plaintiff to damages if successful, and because there is no requirement that Plaintiff specifically allege an amount of compensatory damages at this stage, the Court declines to grant Defendants' request.

19

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Counts II, III and V of the Amended Complaint are **DISMISSED**. Count I is **DISMISSED IN PART**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
April /( , 2014

_____
Raymond A. Jackson
United States District Judge

20